NICHOLAS PETERS et al., Respondents, *v.* LOUISE ADAMS, Appellant.*

(County Court, Oneida County.)

*Street improvements — lack of authority of public officials — one dealing with municipal authorities does so at his own risk — property owner not liable directly to contractor for improvements — evidence.*

APPEAL on questions of law from a judgment in favor of the plaintiffs and against the defendant, which judgment was rendered in Justice's Court in the city of Utica.

W. H. Weller, for appellant.

William F. Dowling, for respondents.

HAZARD, J. It appears that defendant is a resident and presumably a property owner on College street

in the village of Clinton in this county, and at some time in the year 1917 proceedings were had which led up to the pavement of that street. Apparently the building of the curbing was not included in the paving contract. It seems that sometime after the paving job was completed the village trustees decided to have curbing put in along the street on either side. It does not appear that any of the formal steps necessary to official action of this sort were taken, in fact, it is conceded that the proceedings were irregular, or as one of the officials who was a witness described it, "it was an unofficial proposition." It seems to be conceded that so far as enforcing payment by means of an assessment is concerned, the proceedings were irregular and invalid, and no attempt is made so to do. Whether some of the property owners may or may not have consented to the erection of the curbing does not appear, but it is clear that this defendant did not. Without any authority from anyone, and without taking any legal steps, the trustees authorized the plaintiff's firm to erect a curbing along the street in question. This the plaintiff's firm proceeded to do, and this action is brought to recover of this defendant what is claimed to be her proportionate share for the work and materials. The question is thus presented as to whether the defendant, under the circumstances briefly outlined above, can be compelled to pay.

It is not claimed that the officials who authorized this work and employed the plaintiffs had any legal or inherent authority as such to do it so as to bind this defendant. Neither is it claimed that they were in any way authorized by the defendant to contract for her, and the theory upon which the recovery is sought to be sustained is "That if a person allows another to work for him under such circumstances that no reasonable person would suppose that the latter meant to do the work for nothing, he will be liable to pay for it." It is true that there are certain cases, which

we will consider later, in which some such a principle as above stated has been laid down and followed, but in none of these cases cited by the respondent were the facts at all similar to these. No case of this state, at least, has been cited which is at all closely parallel. *City of Davenport* v. *Allen,* an Iowa case, is perhaps the nearest in point of any of the cases cited by the appellant, but that case was one brought by the municipal authorities upon a contract involving an illegal assessment, and under an Iowa statute. The case is to be differentiated, *first,* because this action is not brought by the municipal authorities who authorized the work. *Second,* there is not any New York statute similar to sections 478 and 479 of the Iowa Code. Clearly, the case is not an authority for the plaintiffs here to bring such an action as this.

*Coale* v. *Suckert,* 18 Misc. Rep. 76, is a case where there *was* a contract of employment between the plaintiff and two defendants, and the court held that an agreement between the defendants to divide the plaintiff's bill was not binding upon the plaintiff, that the parties were jointly liable.

*Moriarty* v. *Board of Education,* 112 App. Div. 837, was a case where the plaintiff had undoubtedly been employed by one of the defendants who was a general contractor. It is to be observed that a judgment against the defendant was reversed. It is certainly no authority for what the plaintiff contends for here.

*Worthington* v. *Worthington,* 100 App. Div. 332, was an action by a corporation against its president and has apparently no particular bearing upon the question at issue.

*Crane* v. *Ganung,* 89 App. Div. 398, was a case in which the plaintiff testified that the defendant specifically requested the services from him, etc. Nothing like this appears in the case at bar.

*Williams* v. *Hutchinson,* 3 N. Y. 312, was a case

where services were rendered by one member of a family for another, a situation entirely remote from that in the case at bar. About the same is true of *Ploger* v. *Bright,* 119 N. Y. Supp. 628.

I have considered the foregoing cases in detail because they are cited as authority for the plaintiff's contention. It is true that isolated sentences might be picked out of some of these cases which might tend to establish that if a person permits another one to work *for him* under circumstances from which a reasonable man might assume that the services were not gratuitous, that he would be compelled to pay for them. The plaintiffs were not working for the defendant. They had no semblance of authority from her. Their employment came from the village authorities who it is conceded had no authority to act as they did either as officials or as representing the defendant.

The plaintiffs sued upon an express contract. Their proof did not at all establish the cause of action set forth in their complaint. Item after item of evidence was received over the objection of the defendant, and in many of these instances the ruling constituted reversible error. These items are so numerous that I will not undertake to go into them in detail.

It is claimed on the part of the respondents here that the defendant acquiesced or "accepted the services," and it is, therefore, claimed that she should, therefore, be compelled to pay for them, whether they were authorized or whether she wanted them or not. I do not think this proposition is sound. In the first place, the work was not done on her premises. It was done in a public highway over which we must assume the village authorities had control. *Secondly,* it was done under the authority and direction of the village authorities. The defendant was, therefore, not in a position to forbid the work going on. She was not called upon to forbid or otherwise restrain it. This brings us to the item of the evidence wherein the ques-

tion was asked, "You didn't get an injunction?" This was objected to and the court overruled the objection. I consider this ruling a reversible error. The jury heard the question asked, the objection made and heard the ruling, and were, therefore, led to believe and were warranted in believing when the court ruled as it did that it was the business or duty or there was some obligation on the part of the defendant to institute injunction proceedings to restrain these plaintiffs from doing certain things in the highway in front of her house. This was a serious error.

Another serious error was committed by the court when at the close of the plaintiff's case one of the jurors inquired: "Were Mr. Brockway and Dr. Taylor the village authorities?" The court replied that "They were the president and clerk, but this action is based not on any statutory proceedings, but on an implied contract." I think the court should have either declined to answer the question, or should have explained as he was requested to do that the fact that they were village officials did not *per se* authorize them to make contracts binding upon property owners in the village, other than in the manner provided by statute. It is extremely doubtful if the jury appreciated the difference between an express and an implied contract and as to how that difference would apply to this case. The court permitted them to assume that the work was authorized by " the village authorities," and I think therein it committed an error.

It seems to be a fact that after the work was done and while measurements of frontages were being taken by the village clerk Brockway, he requested the defendant to exhibit her deed. She did so, and it is claimed that some importance is to be attached to that fact. However, it stands undisputed in the case that before she did so she stipulated that it was without prejudice to herself. No acquiescence could be spelled out of that transaction between the village clerk and herself

so as to bind her for the work which the plaintiffs had done, because, if for no other reason, she specifically stipulated that no such effect should be given to it.

With reference to the proceedings in the court below, I think the most flagrant error committed, and I am compelled to look upon it as a flagrant error, was in receiving in evidence a letter written by plaintiffs' attorneys to the defendant shortly before the suit was brought. In that letter the plaintiffs' attorneys said: "The liability of the abutting owners for this improvement was determined in the case of *Peters* v. *Keith,* which was tried before the Supreme Court and a jury here in Utica last Tuesday. The jury found a verdict in favor of the Peters Company for the full amount claimed." Whatever might have been the facts in the *Keith* case I do not know. It is said that they are clearly to be differentiated from the facts in this case, but be that as it may, there can be no doubt that inasmuch as this defendant was not a party to that suit, the adjudication is not binding upon her. However, the statement which was thus got before the jury that the Supreme Court had decided that abutting owners were liable for this curbing, was most highly prejudicial to this defendant, and, in my judgment, alone constitutes reversible error. It is claimed that it was offered, and in fact the court said it was received only for the purpose of showing a demand. We will pass up the question of whether it was necessary to prove a demand in this case or not, and be that as it may, the plaintiffs had no right to incorporate into the case other illegal evidence under the guise of a demand. If they saw fit to include in that "demand" illegal matter or matter which should not have gone before the jury in this case, and they very surely did that, the letter should not have been allowed to go before the jury. Plaintiffs' attorneys could not legalize what was otherwise illegal, and clearly so, by mak-

ing it a part of an alleged demand. If they thought a demand was necessary, they should have made the demand in a proper manner as was entirely within their power to do.

It is urged with earnestness and force that the defendant has had the benefit of the plaintiffs' work and as a matter of justice should be compelled to pay therefor. With this proposition I have no quarrel, but after mature deliberation I am entirely convinced that the plaintiffs had not a cause of action against this defendant. They saw fit to accept employment from the village officials who concede "they were acting unofficially." They dealt with municipal authorities without ascertaining their authority, and it is fundamental that one so dealing does so at his peril. He is bound to inquire and to know if the authority exists and if the regular steps have been taken. This the plaintiffs entirely failed to do. Apparently they went ahead without any investigation and probably without any inquiry. They "took a chance," and it now transpires that their employment was entirely unauthorized so far as this defendant is concerned. I am obliged to decide that under the circumstances as established by this case they cannot recover, and their complaint should have been dismissed when the motion was made at the end of their case. The judgment must, therefore, be reversed.

Judgment reversed.